Last case of the day, Watts v. Northside Independent School District. We'll first hear from Mr. Watts' counsel. I think that's Mr. Keener. Whenever you're ready, you may go ahead. Yes, thank you, your honor. May it please the court. I'm here on behalf of Appellant Robert Watts. We would like to address a few issues with respect to our argument today. First of all, whether Appellant Watts has correctly stated a claim under Section 1983 for violation of his substantive due process right to bodily integrity. Number two, address the issues with respect to the state created danger exception, whether this court even needs to consider it and how it may apply if the court wishes to consider that exception. I will also address Appellant Watts' claim for municipal liability and finally also address the qualified immunity defense of Coach Breed. With respect to a 1983 cause of action, we know that a plaintiff must allege a violation of rights secured by the Constitution or laws of the United States and to demonstrate that the alleged deprivation was committed by a person acting under color of state law. The 14th Amendment has been is a part of the United States Constitution, obviously, and this court is well aware of the right to bodily integrity. That language and that right has been cited in many Fifth Circuit opinions. The 14th Amendment states that no state shall deprive any person of life, liberty, or property without due process of law. The fundamental interest here of Watts is his right to bodily integrity, and that is a well-established right, and it is a well-established right to be free from state actors and state action. Admittedly, Coach Breed did not physically run onto the field and tackle Appellant Watts. However, there's no question that the coach is a state actor, but for Coach Breed's actions of an egregious nature and outrageous nature, there's no question that this incident would not have occurred. What's important and is pointed out in the briefing is that he pled guilty to criminal assault. As pointed out in the briefing, it states that I confess to committing assault causing bodily injury. I plead guilty. So there's no question that we have objective evidence of the mindset of Coach Breed when he carried out these acts. Mr. Keener, how, clarify for me, how does that guilty plea for assault demonstrate state action? Because under Texas state law, that is an act individually himself of Coach Breed. So that is state action independently right there because he pled that he himself was guilty of criminal assault. Number one. Well, cite for me the precedent, some on-point precedent that a guilty plea for assault demonstrates that there is state action. Well, Judge Willett, as you have pointed out in many opinions, that's difficult for us to do when we when we look at these specific cases. And Your Honor, you have pointed out that it's very difficult to find that one first precedent. And you have even stated that, well, that's a free pass for the first person. Well, I've talked about that in the qualified immunity context. And that's another question I have is that guilty plea demonstrates that Breed should be denied qualified immunity. But my question is how that guilty plea should demonstrate that there is state action here. Well, the state action is certainly his acts as a coach, you know, employed by the John Jay High School. So that was state action. And it was an overact. The criminal assault is objective evidence of his overt act and mindset, I guess, is the best way to state it. It's objective evidence of what he was thinking as a state actor. Granted, the players are the ones that hit Mr. Watts and knocked him to the ground. But as Judge Wiener has pointed out in other opinions, that there is a sufficient nexus between the overt act of the state actor causing the independent actions of the non-state actors. And I believe here and in our claims that we have a sufficient nexus between that overt state act of the criminal assault. Is there a specific case on that? But certainly, that is a law that any person would be aware of. And certainly, the right to bodily integrity is well established. So if we look at the nexus issue that's been addressed in these opinions, that we have an overt act and we have certainly bodily injury carried out by the players. And there is a sufficient nexus between those two acts creating the state action. So what my first position in the case on behalf of Appellant Watts is that we have a constitutional violation. And we do not even have to address state created danger because we have a constitutional violation. Certainly, such an act was outrageous and egregious. That would be the next point is, do we have a constitutional violation? We've established what happened. We know what happened. Do we have outrageous and egregious conduct? Absolutely, we do because we have the right to bodily integrity violated either independently by Coach Breed or his overt act of telling the players to do what they did. And also, it's worth considering what the football players do at any level. Well, they do what the coach says. And the coach said, go hit him, go make him pay. Because if a coach says that, the players are going to do it. And if they don't, they're going to be pulled from the game and they're going to sit on the bench. So that's a constitutional violation. Outrageous and extreme and deliberate, absolutely. And that's, I think, where the plea for the assault, again, demonstrates the objective evidence that this court has talked about. This court has talked about and discussed in a number of these opinions in the 1983 cases. We need an overt act, and I believe that we have it. Is there anything else in the record that goes to show that Coach Breed had ever instructed players to assault referees or any other sports officials prior to this assault on Watts? No, Your Honor. There was not. The pleadings talk about this one instance, and this is the only one instance that we're aware of. I might touch on... If it is this one instance, how do you connect this to liability for the school district, assuming you have an actual constitutional violation? And that's the issue, obviously, of municipal liability and Monell liability, and I'm ready to move into that, and I might sidestep the state-created danger because we're pretty close to that issue anyway. With respect to Monell and municipal liability, I believe our pleadings established that. When we look at the case of Doe-McGee versus Covington, clearly this court stated that we needed to look for whether a plaintiff's harm was caused by a constitutional violation. I believe I've addressed that issue, number one, and number two, whether the city in Doe, but whether the school district or the municipality is responsible for that violation. So I believe that we have stated that cause of action with respect to notice pleading under the Ashcroft and Twombly line of opinions. We have stated that this is constitutional violation, number one, and number two, we have stated that the municipality is responsible for it, and I believe that's all we need at this juncture. I think it's important for us to look at the Doe opinion. In the Doe opinion, the reason municipal liability was not found was because there was no constitutional violation. Judge Wiener said in his dissent, he disagreed with the majority opinion, and he said, I believe we do have a constitutional violation, and he would find it. But we have pled a constitutional violation, and we meet notice pleadings. Now, Judge Wiener... But you need to show some facts that would allow the inference that the school district knew about this, ignored this problem with this coach. I mean, I don't think... I mean, you can't say there wasn't a policy in the school district for coaches to have their players beat up referees. You're not saying that, are you? No, I'm not, Your Honor. Well, then you'd have to show somehow that, you know, they knew he was doing this. This goes to Judge Willett's question, and they were just not... they were turning a blind eye to it and letting it persist, which it sounds like you don't have that either. This was a one-off event. It is a one-off event, but we have pointed out in our pleadings with the UIL coach's code of conduct, and we've said that conduct is a number of things. It's five or six different things that the coach has to be mindful of his position. The coach must refrain from disrespectful conduct, promote sportsmanship, and there's a number of things that's in the list that we have pledged in our pleadings or in our briefs, but what I want to point to is this is not a summary judgment case. When we look at some of the opinions that the school district has relied upon, that's the case they primarily rely upon is the Eugene case versus the League Independent School District, and that's a summary judgment case, and it goes on to, you know, you have to have a policy that is a moving force behind the violation, and it goes through a lot of different steps, but we're not at that step yet. We're not at the summary judgment level, and so that's why I believe we get... all of us may get caught up in the idea of specific evidence and whether it creates a fact question or not, because in the Eugene case, it's a summary judgment case. It is not a motion to dismiss case, and so... You just say you're not even alleging that they had a policy of players beating up referees. Correct. I'm not, and I... I understand that you don't have the proof yet. I get that. That's... we're not at summary judgment, but at Rule 12, you have to have an allegation. What are you alleging the district did wrong? We are alleging that, number one, just consistently with Doe. Number one, that there was a constitutional violation, number one, and number two... What did the district have to do with that constitutional violation? We are saying that they are responsible for that constitutional violation. Sounds like a superior liability, which doesn't apply, but anyway, go ahead to your next. I don't want to tie you up too much on this. I understand. I understand. That's the state of the pleadings, but we have pointed to the UIL conduct. We've also pointed to issues with respect to the school districts are a part of the rules and make the rules. Let me move on to the qualified immunity, and I was looking at my time, Your Honor. With respect to qualified immunity, we can sidestep and we move away from municipal liability, although I believe that our qualified immunity, we know that that's a two-step process. Whether a constitutional statutory violation has occurred and two, whether the law was so clearly established at the time of the incident that every reasonable person or officer or coach would have known that the conduct was illegal. Clearly, I believe, I know that we have alleged that, number one, and number two, that is sufficient to overcome the qualified immunity defense at this juncture. Again, we go back to the bodily integrity right that every person has that's been violated under the 14th Amendment, number one, and number two, we know that criminal assault is a clearly the defendants violated clearly established statutory or constitutional rights of which a reasonable person would have known. We know that that qualified immunity is in question at this time, and because of that, it does work to appellate Watts' favor in this case, particularly under these facts, because number one, we've got a violation of law with respect to bodily integrity. We've got a criminal assault, and Judge Willett as well as Judge Weiner has said before that if we have a constitutional violation, that's enough, and that's what we have here, I believe. Clearly, those laws were established. Sometimes we know that the courts jump to determining whether there was a reasonable act and they skip over a constitutional violation. Our pleadings do not do that, and when you think about the reasonable officer, if we look at that issue with respect to a reasonable coach, any reasonable coach in America at any level from grade school to the NFL would know that what that coach instructed those players to do was a violation of law, was a violation of Appellate Watts' bodily integrity, number one, and was a criminal assault. We have an overt act, and we have an action that is outrageous and egregious, and we believe we can overcome that defense at this time. Let me ask you a practical question. Yes, Your Honor. Because there's also these state claims, assault battery tort claims. What does a constitutional claim give you against Mr. Breed that a state tort law claim doesn't give you? Now, I understand you might be able to get a municipal liability on the constitutional claim, but let's put that aside for a second. Just against Mr. Breed, is there anything, if you win here, we reverse, you go to trial, you show a 14th Amendment violation, and you ask for a judgment against Mr. Breed. Is that better in any practical sense for you than a victory on a state battery claim against Mr. Breed? Yes, Your Honor. It should be a slam dunk given the criminal conviction. You can answer my question. In a specific short answer would be attorney's fees. Because of 1983. Okay. That's the kind of practical answer I was looking for. I don't think we'd be here if there was a municipal liability through 1983, which I'm sure is a factor as well. All right. Well, thank you. You'll get your rebuttal. We'll hear, I believe, next from Mr. Allen. It pleases the court. Good afternoon. I'm Jeremy Allen. I'm here on behalf of Appali Mack Edward Breed and his individual capacity. And so today my arguments are going to be limited to Mr. Breed's immunity defense. As appellate counsel for appellate has pointed out, he has the burden to show that Mr. Breed violated a known, clearly established constitutional right. And he simply hasn't met that burden. He doesn't cite to any authority and has acknowledged there's not any authority directly on point there. No materially similar cases that he can point to from the Supreme Court or the Fifth Circuit or anywhere else that the allegations here constitute a violation of a known, clearly established constitutional right. And we would further argue that there was no, that Mr. Breed did not violate any constitutional rights at all. As counsel has acknowledged, the actions that are complained of were committed by two student athletes who are non-state actors. In order for there to be a constitutional violation of action on behalf of, or committed by a state actor, and that simply didn't happen here. What if a teacher tells another student, oh, go whip that student, go beat up that other student. That's not state action. I mean, the teacher is obviously a state actor, a state official. Their instructions are not state action. I believe that there's a responsibility incumbent student in a situation like that to know the difference between an instruction that should be followed by a teacher and one that should be ignored. You know, an eight year old kid, let's say it's an eight year old. But maybe even aside from that, maybe you're right, maybe you're right. The football players here should have known better, no doubt. But I mean, the coach is a state official and he's giving instructions. If his instructions support a constitutional violation, maybe they don't. But that's, I mean, why isn't that state action? I mean, he's a government employee doing something. The doing something is ordering players to go assault the ref. He didn't just order them. He told them if they didn't, there would be consequence. Well, your honor, I would go back to that's not a state action. I would say that in a circumstance like that, he's no longer acting on behalf of the state or in any capacity. He's gone off the rails acting on his own, so to speak. I don't believe that that constitutes a state action. I don't believe there's any precedent stating that that is a state. But you'd say the same thing if he was the one who punched the referee, you'd say, oh, he's going beyond the authority he had. I mean, I mean, that's definitely under state law when you're saying, you know, are they within the scope of their employment? But I think state action is just looking at were they were they a government official? Let me give you another hypothetical. A police officer. We all know it's state action if a police officer engages in excessive force by, for example, shooting someone when there's not a sufficient reason to do so. What if a police officer said to a citizen, hands him the gun and says you shoot this person? And you can say the person should know, but they do that. That wouldn't be state action attributable to the police officer. Your honor, I don't know. I don't know. I think every case would be different based upon the circumstances, whether there was a compelling reason, whether there was, as Judge Wiener pointed out earlier, a threat of consequence had he not complied. I think that would be a very fact intensive. I can see why that matters to whether the force was appropriate or not. But I guess I guess I don't see why that matters to whether it was he was that state action giving that order. But. OK, I mean, a prison guard brings in a friend because he knows, oh, I can't beat up a prisoner because, you know, I'd get in trouble. So I'm going to bring in my friend who's a sadistic guy and have him beat the crap out of this prisoner. You'd be saying that's not state action on the on behalf of the I know you can't you can't sue the private actor. I completely get that under the Constitution. But you're saying you couldn't sue that prison guard for or for bringing in his buddy to do what he wanted to have done. What I would say, your honor, is there's no precedent saying that that's state action, that there's no case that's that's held prior, that that's a known constitutional violation and whether it ultimately amounts to state action or not. In this case, Mr. Breed is still entitled to qualified immunity because there is no precedent which states that that is a known constitutional violation. And so I know that's kind of doesn't directly answer your question, but I think for purposes of Mr. Breed's, I know he was criminally convicted. Is he still a coach? What happened to his job? No, your honor. He surrendered his teacher's license. And I would like to address just very briefly in the time I have remaining this criminal conviction. It was a plea agreement, and as appellate counsel points out, it was based upon a criminal vicarious liability statute in Texas. And there is controlling precedent in the Fifth Circuit that state liability laws aren't applicable to the 1983 claims. And so, you know, given that, given the controlling law and the there's no clearly established violation of a constitutional right, and Mr. Breed is entitled to qualified immunity. All right. Thank you, counsel. We'll hear from Mr. Wood for the school district. I think you need to. Yeah, there you go. Unmute yourself. Good afternoon. May it please the court. In looking at clearly established law, this is a very easy case vis-a-vis my client. I will speak only with respect to Northside Independent School District, although I also represent Mr. Breed in his official capacity. The court is well aware that claims against a person in their individual capacity who's an employee of the governmental entity are redundant or duplicitous of the claims against the district itself. So the first thing that I would like to address is that we do not recognize I think we cannot recognize in this in a violation of rights secured by the Constitution. Mr. Allen addressed that issue. There is a dearth of authority with respect to that. And what I would further like to say is that it also fails on the second prong of that case of the law. And that is that the I apologize my tablet started speaking to me during this thing. Can you get it off? Because we can hear it if you can get it. I think it's off now. This is not an action taken under color of state law. It was not a state actor who committed this. Now, as Mr. Allen pointed out, Mr. Breed was free within the criminal context to accept a plea. But he's not free to create state liability by accepting that plea. And so even if this case will fail on each of the points, there's the failure to demonstrate a violation of rights secured by the Constitution. There's a failure to establish that there was actually state action at all. If the action is by third parties, and that really is undisputed in this instance, it was the actions were committed by the two students. The only way that he gets around that potentially the battery was committed by private actors, but his order was that the order came from a state act. Right, right. And what I what I was question then become, does that order not not the beating up? I mean, but the order itself create a constitutional violation. And maybe it does, maybe it doesn't. But why isn't that order he gave something from a state actor? Well, with respect to so I'm going to make the argument from the standpoint of the district and Mr. Breed in his official capacity and and treat that differently than his individual capacity. What I would say is that the requisite elements are not present. First of all, Mr. Breed does not have the authority to make that to give that kind of directing. That is not within the scope of his authority to give that kind of directing. Now, Your Honor raised a couple of examples, but the examples could be even more egregious. If you think, for instance, that an ROTC instructor who is instructing students with the risk with respect to the use of firearms suggested to them that one of them ought to take their firearm and assassinate a government official. There is no way that the liability is to extend to a school district because of and clearly he's acting outside the scope of his story. So I think it's very clear that when he makes this decision, when he gives this directive, he is acting outside of the scope of his authority. If we were to examine and we haven't spent much time on the state created danger issue. But if we establish the state, if we look at the state created danger issue, one of the first thing that's going to look that we're going to look at is whether or not the person being full acting in the scope of their authority created the dangerous environment. Well, clearly, Coach Breed did not have the authority to create a dangerous environment. And then it seems that your view is that action, not every action committed by a state actor constitutes state. That's exactly right. That is correct. And clearly, if it is outside the scope of their authority, I think that makes it even more. And on the on the scope of the authority question, does Northside, does it maintain any official school policies regarding the of athletic teams? Well, we have a number of policies. And as the court can imagine, those policies would very similar to the UIL policies would preclude people from engaging in those types of policies. That was what was very confusing about Appellant's argument when we get to Manel liability about policy, because he acknowledges in his instance, policies created by UIL, which cannot be binding on the district for purposes of Manel liability. The district's Board of Trustees, which is the sole rule and policymaking authority for the UIL rules. But even if they had, the interesting thing about Appellant's argument is that those rules would preclude and not be the moving force behind the injury, that they would actually preclude the actor from engaging in the type of action that that took place in this instance. So draws an absolute bar to Manel liability to municipal liability in that sense. And they set that for the in Appellant's brief, they set forth some of the principles, again, the principles from the UIL policies. And again, if you were to assume for purposes of argument that those were Northside independent school district policies, they don't help his case, they effectively destroy his case. And so there's no way to reach liability on the basis of the policies that exist, because the policies, any policies that he could point to. And that's, you know, part of the pleading issue, he in essence says, well, I don't have to come up with all the specifics, but what he does have to allege for purposes of a 12B6 response is he has to show that he meets at least the minimum requirements of the cause of action. And he's got to be able to point to and, you know, the district's 12B6 motion specifically pointed out the defect that there, you cannot point to a policy. And, you know, no amount of discovery is going to lead to that, because he's already recognized that any policies that would have been adopted by the governmental entity would have this conduct rather than encouraged it or permitted it. Let me move moving off of policy back to the question of an underlying state action. I'll throw out one more hypothetical, and then this will be my last one. Let's say the football coach, there's a kid on the team who's a Jehovah's Witness. Okay. And we all know since Barnett, a Jehovah's Witness does not have to stand for the Pledge of Allegiance or the national anthem. And so the coach says to the team, if you know if that player who's a Jehovah's Witness, if he doesn't stand, you pull him up and you make him stand. You would still say that's not state action on behalf of the coach. I guess my point being state doesn't have to be actual physical action. It can be it's often you can violate the Constitution by your words. Right. Yeah, I understand. And, you know, I have to agree with Mr. Allen that the actors have to preclude that that kind of liability. So that in the response by an individual citizen is to say, I'm not doing that. That's not the right thing to do. I'm not taking the ROTC rifle and doing something illegal. I'm not going to hit the referee in the back. Those intervening actions certainly. And I understand, you know, Judge Costa, your point is well taken. There may be a line somewhere down the road where giving a directive to a four year old in a pre-K class, you know, although because we all know that that's a completely different mentality, but somewhere down the line, that's a possibility. But certainly in this situation, the actions of the individual private parties were the intervening cause. And yet coach, the coach had no authority to give that directive. The other thing I would just briefly like to hit on is the issue. So we know that unless we create unless the court were to accept basically the state created danger theory of liability, then there's no responsibility to protect against injury from third parties. And so if there's no response, but that's the end of the inquiry. If the court were to for some reason conclude that this were the first time that it were willing to state created danger theory, there is still no possibility of him reaching a successful claim for substantive due process because the court's well aware that established precedent requires that this be outrageous conduct. And what is evident from this and plaintiff has not provided any authority other than just to label it as outrageous conduct. But in this instance, what we know clearly from the record is that coach Braid resigned from his position with the district and he surrendered his teaching license. There was no suggestion even in connection with the criminal plea that has been repeatedly discussed that he was even never incarcerated for this conduct or spend any time for that. So the if we look at the cases that analyze the issue of outrageous conduct, you can see that even unlawful conduct will not meet that standard. And so it's going to. And of course, it's set forth in our brief what the standard is, but it's going to take a really appalling set of if you ever got past that threshold question of are we going to adopt state created danger. Mr. Wood, this is off this case. Do you do a fair amount of work for Northside? Yes, sir. I do. However, this case comes out, certainly I'm sure judges can appreciate a school district that names all of its high schools after judges. Absolutely. That must be the only one in the country that does that. It's a very unique practice. Yeah. And, you know, not only do they name the schools after after justices, but they also there are all kinds of memorabilia. They've had several sitting justices or live justices who have come to the dedication and they'll have, you know, a gavel. They'll have their robe. They have all sorts of educational materials related to that. So it's a very impressive setup. All right. Well, thank you. And we'll now hear rebuttal. Mr. Keener. Okay. May it please the court. Thank you for the opportunity for rebuttal. With respect to substantive due process, clearly I believe we've got a state action because we've got the right of bodily integrity violated with respect to these actions. Mr. Keener, when the Supreme Court, you know, in Brentwood Academy about 20 years ago, you know, said there can only be state action if there's a close nexus. And when they talk about close nexus and what that means, they flag instances of where the state provides what the court called significant encouragement in order to say that something is attributable to the state. And that's why I asked earlier about whether the school knew or condoned or encouraged because the Supreme Court talks about significant encouragement when they talk about close nexus. And this, at least to my mind, tell me why it's not more personal vendetta, why it's not private vengeance rather than an action of the school. Well, it's certainly an estate actor. I mean, there is no question that this is. Are you saying that every action of a state actor is state action? Well, I'm not sure that everyone is, but I certainly believe that this one is because when we look at that and we try to try to say, well, that's not within the scope of his duties. Well, the scope of his duties at that time and at that moment was to be a football coach. That was the scope of his duties. And he certainly on the clock and certainly, you know, and acting on behalf of the John Jay High School. So to say, I mean, I think that's too thin a line to try to draw when a football coach takes that upon himself to say, do this in the auspices or the situation of a football game. As I said before, those football players carried that out. And with respect to the idea of outrageous or egregious conduct, this is a unique case that I I'm not familiar with any other case. If a police officer out on the job, you know, on patrol gets out of his car and just randomly, for no reason whatsoever, start shooting citizens, which, you know, no one would say that's part of his duties. That's within the scope of his employment. Of course not. But wouldn't that be still still be state? He's still a state actor as a police officer. I would think so. Now, whether you know, the city is not going to be liable in that case because they you know, they had no idea this guy was going to go go crazy out on out on patrol. That's certainly state action. And I believe we have state action here because we have to look at the context of it. We've got we've got impressionable young men could be ladies in some other game. But here we're dealing with young men in a football game that do what the coach says. And I, regardless of whether it's in, I believe it's within the scope, course and scope of his duties. Yes. Council points out that we do not have a precedent to this effect. But we do have the earlier case in the Fifth Circuit with respect to that, the action of the student during the and the difference in that case is that there was no evidence that the coaching coaches or individual coach or coaching staff was involved. Here we have that. So even if we don't have a prior precedent, I think that's a distinction without a difference here with respect to Monell liability. Again, I believe that we've stated a constitutional violation. And again, when you look at Doe versus McGee Covington, I think we fall within that realm. And the argument that, well, if the school district has a similar policy as the UIL coaches policy, we've stated we've stated a cause of action at this juncture with respect to those allegations. This is not summary judgment case like the Eugene case. And finally, qualified immunity. I believe we have met the pleadings necessary to overcome that defense and that this case should be reversed and remanded and allow referee Watts, Appellate Watts' claims to move forward. All right. Well, thanks to all three of you for a vigorous argument. The case will be submitted and you can go ahead and exit the Zoom. Take care. Thank you. Yes, Your Honor. Thank you very much.